LOST PAPERS—EVIDENCE—FRAUDULENT CONVEYANCE—SPECIFIC
PERFORMANCE—NEW TRIAL.

---

WILLIAM H. MAYNOR, and DAVID GODWIN, vs. ZERA LEWIS.

*Bill for Discovery, Relief, and Injunction—Verdict and Decree for
Complainants, and Rule Nisi granted, for a New Trial.*

1. Secondary evidence of the contents of an original paper may be admitted, at the discretion of the Court.

2. A party's own oath is competent, to account for the loss of a paper, so as to let in secondary proof.

3. When a bond is lost, the acknowledgment of the obligor, that he executed it, is sufficient proof, without producing the subscribing witness.

4. When an instrument "has performed its office," and is no longer essential to the legal title; the same proof of its execution is not required, as when it is a part of the title itself.

5. An agreement to sell land will not be held fraudulent, on the suggestion of a subsequent purchaser, with notice of the agreement, unless the party, said to be defrauded, has taken steps to set it aside, in a Court of Chancery.

6. A bond for titles to land will be held good in Equity, against a subsequent purchaser of the same land, who had notice of the bond.

7. Misdirection of the Court to the Jury, on a point not affecting the substantial merits of the cause, is no ground for a new trial.

8. Equity will enforce a parol agreement, for the sale of land, against a subsequent purchaser with notice of it; where the first purchaser is in possession, and has made substantial improvements.

9. The purchaser of lands, not in the possession of vendor, is deemed to have no-

z

tice of the tenant's claim to them: the possession being sufficient, to put him on his guard.

This bill was filed, to enjoin Zera Lewis, the respondent, from proceeding at common law, in an action of ejectment, against the complainants, for the recovery of lot of land No. (64) in the 8th District of originally Lee, now Randolph, County.   The bill charges, that on the          day of          18  , William H. Maynor, one of the complainants, contracted with one Jacob Dove, the drawer of the said lot of land, for the same,  who then  resided,  at the time of the aforesaid contract, in the county of Wilkinson, but who, at the filing of the complainant's bill, resided in parts unknown, beyond the jurisdiction of this Court.   That at the time of making the contract, for the purchase of the said lot of land, Dove made and delivered to Maynor his bond, conditioned to make titles, upon the payment of the promissory note, then and there given, for the purchase money. The bill also charges, that Maynor  sold to  Godwin, the other complainant, the said land, and gave his bond to Godwin, conditioned to make titles, so soon as he, Maynor, could receive titles from Dove. The bill further charges, that after Godwin had purchased from Maynor, and was in possession, Lewis made application to Godwin, to purchase the land from him; that Godwin informed him, Lewis, that he held only Maynor's bond for titles, from whom he had purchased, and that Maynor had purchased from Dove, and held Dove's bond for titles; that Lewis, upon learning these facts, and ascertaining that the legal title was still in Dove, and being unwilling (having refused) to give Godwin his price, went immediately into the county of Wilkinson, and for the sum of two hundred and fifty dollars, purchased the legal title from Dove, who had previously sold the same to Maynor, in the manner before related.

The bill seeks a discovery of these facts, and charges Lewis with being a subsequent fraudulent purchaser,  with notice of the equitable title in Maynor from Dove, and  prays that the deed, from Dove to Lewis, be decreed as fraudulent and void, and that the deed, from Dove to Maynor, made in pursuance of their contract as aforesaid, be established, and confirmed, by the decree of this Court, and the said Lewis perpetually enjoined, in his action of ejectment, pending at common law.

[Maynor & al. *vs.* Lewis.]

Upon the trial of this cause, at the February term, 1842, of this Court, under the charge and direction of the Court, upon the law, the Jury returned a verdict for the complainants; and a decree was had accordingly. The respondent's counsel, being dissatisfied with the charge of the Court, moved a rule nisi (which was granted) containing the several grounds of exception, calling upon the opposite parties to shew cause, on or before the first day of the next term of this Court, why a new trial should not be granted.

In discussing this motion for a new trial, I will only notice the several grounds insisted upon by counsel, as they are presented in their order, in the rule nisi.

The first of the five exceptions, taken to the charge of the Court, is "That the Court erred, on the trial of the cause, in admitting parol "testimony, on the part of the complainants, to prove the contents of "the bond, from Dove to Maynor, to make titles to the lot of land, "without first sufficiently accounting for the original, by showing its "loss or destruction, by competent proof."

Let us recur to the testimony, and see if the Court erred, in permitting parol testimony of the contents of the original bond to go in evidence to the Jury, without first having the original sufficiently accounted for, by showing its loss, or destruction, by competent proof. William H. Maynor swore, that the original bond, from Dove to Lewis, was not in his custody, power or control; that he had searched for it, and it could not be found; that he thinks, upon receiving a deed from Dove to the land, he gave the bond up to Dove, believing and thinking it to be of no further use to him—that, if he did not give it up to Dove, the same is lost or destroyed, and that Dove resides in parts unknown, beyond the limits of this State. Such was the testimony, offered to the Court, and upon which, secondary evidence of the contents of the original bond, from Dove to Maynor, was permitted to go to the Jury. That Maynor was competent, before the Court, himself, to account for the original bond, is a legal point so clear, and so repeatedly adjudicated, that it would unnecessarily consume time, and sport with common sense, seriously to discuss it, and learnedly to establish, by reference to authority. Then, if

[Maynor & al. *vs.* Lewis.]

Maynor can prove the loss, destruction, or in any other manner bring himself within the rule laid down, in which he would be entitled to make secondary proof; has he so done? has he given to the Court a good reason, why the original bond is not itself now in Court?

"The admissibility of evidence, of the loss of a deed or other in-"strument, is always addressed to the sound discretion of the Court. "Where a bond was surrendered, and thereby became *functus officio*, "it was held, that there being no motion to preserve it, its loss should "be presumed." Cases cited in 4 *Philip's Ev.* 1222. Beggs *vs.* Taylor, decided by the Supreme Court of the United States, in 5 *Peter's Cond. Rep.* 647. The plaintiff swore, that "the original "agreement, between himself and the defendant, relative to certain "bank stock in controversy, his impression was, that he tore it up, "believing it to be of no further use to him; and if he did not tear it "up, the same was lost or destroyed; that he had searched for it, and "it could not be found." This was held sufficient, to permit secondary evidence of the contents of the original agreement, to go to the Jury. "Proof, that the paper in question was thrown aside, as useless, and "that the party believes it lost or destroyed, will be sufficient, to let "in secondary evidence."—1 *Philip's Ev.* 454. Justice Thompson, in the case of the U. S. *vs.* Reyburne, reported in 6 *Peters R.* 365, lays down the rule, that "secondary evidence, of the existence "and contents of any original instrument, may, always at the dis-"cretion of the Court, be shown, where the non production of the "original is sufficiently accounted for, without requiring proof of its "loss or destruction." In this case, the original commission, for which the defendant was indicted in the Circuit Court of Maryland, under an act of Congress, as having issued to one John Chase, for a vessel, to the intent, that the vessel might be employed in the service of a foreign people, to cruise and commit hostilities against the Emperor of Brazil, with whom the United States were at peace, and upon showing that the original commission was in the hands of the said John Chase, against whom a bench warrant for the same offence had repeatedly been issued, and returned "*non est inventus*," was held that, as the prosecutor knew not *where* to make application to the said John Chase, tracing the original commission in question into his possession, who *could not be found*, was sufficient to permit second-ary evidence of its contents, to go to the Jury. How stand the

[Maynor & al. *vs.* Lewis.]

facts of the case at bar? Are they not analagous to the cases cited? and do they not bring this case within the self same principles, laid down in these cases, and to be found in many others? Maynor swears, that his impression is, that believing the bond to be of no further use to him, upon receiving the deed from Dove, he gave up the bond to Dove; and that if he did not surrender it, from having diligently searched for, and not finding it, he believes the same to be lost or destroyed. That Dove, in whose possession the bond was lost, lives beyond this State, in parts unknown.

The ancient rigor of the common Law, in this respect, has been much abated. It dispensed with the production of the original, only in a few excepted cases, such as casualty by fire, by robbery, and rebellion. The case of Read *vs.* Brookman, 3 *T. R.* 157, is the first case to be found, in which the rigor of the ancient rule was relaxed, and a declaration was sustained, brought upon a deed, and profert dispensed with, upon the general allegation of *loss*, by time and accident. The same liberal doctrine now prevails, in all the Courts of England, and of this Country. In Betts *vs.* Jackson, 6 *Wendell*, 173, 181, the authority is laid down, as admitting of no exceptions, to presume the destruction of notes and other instruments, *functus officio*, which have been paid, and cancelled, and which were apparently of no further use. I might refer counsel to other cases, containing the same authority; but deem it unnecessary to do so, as these have fully satisfied my mind, that there was no error, in the charge of the Court, as contended for in the first ground.]

The second and third exception, which from their character are so near the same, I shall consider together. The second exception is, "that the Court erred, in permitting the contents of the bond to "be given in evidence, before proof of its execution, in behalf of the "complainants." And the third is, "that the Court erred, in admitting "hearsay evidence, in behalf of the complainants, viz. the sayings of "Dove, subsequent to his deed to Lewis, the defendant, which saying "went to admit the execution of the bond of Dove to Maynor."

The testimony, introduced, and which went to prove the existence of the original bond, was the evidence of Ransom Godwin, who swore, that he saw, in the hands of Maynor, an original bond, of which he

took a substantial copy, which bond was made by Dove to Maynor, on the　　day of　　18　　the same as set out in the complainant's bill,—that he heard Dove acknowledge the same to have been made by himself,—that he had seen the bond, in the possession of Maynor, anterior to the date of Lewis's deed,—but that his acknowledgments were subsequent to the deed to Lewis.

In investigating this branch of the subject, the first enquiry, presenting itself, is, whether the acknowledgments of Dove, that the bond held by Maynor was his instrument, was sufficient proof of the due execution and existence of the original bond, without first calling upon the subscribing witnesses to the same, to prove the bond; and secondly, whether his acknowledgments, made subsequent to his deed to Lewis, can affect that deed.

To the first enquiry, I answer, that unless I have greatly mistaken the authorities, which I have carefully studied upon this point, Dove's acknowledgments, of the genuineness of the bond, did, under the peculiar circumstances of this case, dispense with the necessity of calling upon the subscribing witnesses. As a general rule, a *technical* rule, remarks Lord Mansfield, in the case of Abbott *vs.* Plumb, 1 *Douglass*, 216, 219, the confession of the obligor does not dispense with the necessity of producing the subscribing witnesses, unless it be shown, that their attendance cannot be procured,—yet if the subscribing witnesses deny the deed, you may call upon other *witnesses*, to prove it. In this case, Lord Mansfield had previously decided, upon the reason, and common sense view of the question, that the acknowledgment of the obligor was sufficient; and upon a rule nisi, granted for new trial, he makes the remarks, imputed to him in this case, in which he clearly points out the absurdity of this *technical* rule, which cannot dispense with the subscribing witness, and yet permits you to contradict, and entirely render nugatory, the testimony of those very subscribing witnesses, when they deny the deed. Chief Justice Spencer, in Hall *vs.* Phelps, 2 *John. R.* 451, permitted the acknowledgments of the maker of a promissory note, attested by subscribing witnesses, to go in evidence, without calling upon the subscribing witnesses; and remarks upon the case of Abbott and Plumb, that it is a strange principle, which requires the production of the subscribing witnesses, to prove a deed, and yet, if they deny it,

[Maynor & al. *vs.* Lewis.]

you may prove it *aliunde.* The confession of a party, that he gave a note, or any instrument, precisely identified, is as high proof, as that derived from the subscribing witnesses. The same doctrine is recognized as good authority, in cases involving the same identical principle, in the following cases—Mauri *vs.* Heffernan, 13 *John. R.* 75 ; Shaver *vs.* Ehle, 16 *John. R.* 201.

But aside from the authority of the cases above referred to, upon the first and best principle in the law of evidence, this bond has been duly proven to have had existence, and to have been duly executed.

The first and best rule of evidence, as I said, is that the best testimony, the nature of the case admits of, shall always be adduced. Then, the best testimony in this case would have been the production of the subscribing witnesses. If they could not be procured ; then the hand-writing of the obligor. If that cannot be proven ; then the acknowledgments of the party himself are always admitted to be evidence, as high as the testimony of any witness, present, but not subscribing the same.—1 *Philips Ev.* 475 ; Jackson *vs.* Neely, 10 *John. R.* 394. Do the facts of this case show, that this rule has been adhered to ? It was in evidence, before the Court, that the original bond was either lost or destroyed, or had been surrendered to Dove, after having performed its office. The original, not being in the custody, power, or control, of the complainants, as a matter of course, could not be testified to, by any witness. Godwin, who swore that he heard Dove acknowledge the bond to be his bond, swore, also, that he knew nothing of Dove's hand-writing. It then follows, as an irresistible conclusion, that the acknowledgments, in this case, by the obligor in the bond, are the best testimony, that it was in the power of the complainants to produce, from the nature of the case. This view is fully sustained, from the fact, that these acknowledgments were made, concerning the very bond, that Ransom Godwin had, for some time previous, seen in the possession of Maynor, and which, upon the trial, could only go to the Jury, by secondary means.

If, then, the acknowledgments of the obligor prove the execution of the bond, and the facts of the case dispense with the necessity of producing the subscribing witnesses ; the Court has committed no

error, upon that point, in permitting them to go to the Jury. But to the second point :—Let us see how the acknowledgment of Dove, subsequent to his deed to Lewis, fixes error upon the Court, in not ruling out such evidence.

First : These acknowledgments were made, concerning a bond, that had its existence, long before the date of Dove's deed to Lewis, and which had been, and was then, in the possession of Maynor. And, secondly, Dove being a party to the contract in the bond, his sayings must be admitted ; those sayings, in law, always importing verity, and as high evidence, as though Dove had been placed upon the stand, himself, to testify. The defendant's counsel admit, that if Dove was present, he could be sworn as a witness. This much conceded, the question, to my mind, is settled, at once ; for the same rule, that would admit Dove as a witness (he being a party to the contract sought to be established in the bill) also admits his sayings, and tells the complainants, that they, not being able to compel the party to testify, shall always be entitled to the benefit of any testimony, manufactured from his admissions.

The counsel contended, that Dove should have been made a party to this bill, before his acknowledgments, or sayings, can be given in evidence. To this it is replied, that Dove has taken up his bond, and made a deed ; and that he also resides in parts unknown, and beyond the jurisdiction of this Court. But were he within the jurisdiction of this Court, as this question only incidentally and remotely affects his interest, it is not necessary that he should be made a party.— *Story's Pl.* 79 to 100. But, to return to the acknowledgments of Dove—It is a rule, that is well established, and one that I believe is recognized, by all the Courts, that where a bond, or any paper, has performed its office, and is no longer essential to the legal title, the same proof, respecting its execution, cannot be demanded, which might be required, were it relied upon, as composing a part of the legal title itself. Such was held to be the rule, in the Supreme Court of the U. S. in Baldwin & ux. *vs.* Massie's heirs, 5 *Peters' Con. Rep.* 252. In this case, titles upon the assignment of a military warrant had issued, and the party was called upon to prove the existence of the assignment, and the Court decided, that the assignment itself, having performed its office, being no longer essential to the legal

[Maynor & al. *vs.* Lewis.]

title, the same proof, respecting its execution, could not be command-ed, as might be required, were it relied upon, as composing a part of the legal title. In the case at bar, the bond from Dove to Maynor, had performed its office. Dove had made a deed, to Maynor, but subsequent to his deed to Lewis. The bond, having performed its office, is no longer a paper essential to the legal title. The bond is only relied upon, as an incident, a collateral circumstance, from which the Court and Jury are informed of the equity in the com-plainant's bill, and their right, in Chancery, to have the deed, from Dove to Lewis, cancelled Maynor certainly had the right, to call upon Dove, for performance of his contract. In doing so, if Dove has taken up and redeemed his bond, by executing a deed to May-nor, for the land in dispute, and, in doing so, has acknowledged his bond, as stated in complainant's bill; then, I repeat again, that the same proof cannot be required, respecting the execution of the bond, as though the bond constituted a part of the legal title. The complainants charge, in their bill, that the copy, as therein set forth, is a substantial copy of the original bond, made by Dove to Maynor, on the          day of          18  . They have proven, by parol testimony, that the copy was, substantially, a copy of the original, and that the original bond itself was acknowledged to have been made, by Dove himself. With these facts before us, and the authority of the cases referred to, can there be a solitary doubt, as to the correctness of the charge of the Court, and the untenable char-acter of the exceptions, relied upon by the defendant?

The fourth exception taken is, that the Court erred, in charging the Jury, that if the bond, from Dove to Maynor, was void, on the ground of fraud, on the part of Maynor, in reading the same to him, Dove, falsely, at the time of its execution; until the same was set aside, on a suit between Dove and Maynor, it was valid, and binding, and that a Court of Chancery, cognizant of the fraud, would enforce it, until it should be set aside. This exception does not recite the language of the Court, in its charge, upon this point. The language, used in the charge to the Jury, was, that it might be true, that Maynor did deceive Dove, in writing a bond, different from the one agreed upon, that should contain their contract; and it might be true, that his contract with Dove was not free from the imputation of fraud: Yet, if Dove took no steps, and used no means, either to

A*

annul or rescind a contract, into which he alleges himself to have been fraudulently drawn; that the Court and Jury, cognizant of such a fraud, were bound to enforce this written contract, until the same, between Dove and Maynor, had been legally annulled or rescinded.

But, let us examine this exception, which imputes error to the Court, in its charge to the Jury, and see how it can stand the scrutinizing test of the authorities. To argue that Dove could resell this land, already sold to Maynor, would be to contend, that one party alone to a contract, at his pleasure or caprice, upon the alleged grounds of fraud, without the privity or assent of the other party, might rescind the contract: and unless the contract be set aside, either by the joint act of the parties, or by an act and operation of the law, it still retains all the binding force and efficiency of a contract. In Skinner *vs.* Dayton, Chancellor Kent remarks, that he is inclined to think, it is not in the power of one party alone to a contract, to rescind that contract. This, he says, seems to be the French law; but the language of the English Judges seems to be different. In Smith *vs.* Field, 5 *T. R.* 402, the doctrine, with the English Courts, seems to be settled, beyond a cavil, that one party alone to a contract cannot rescind the contract—it must be the act of both parties. If a party is allowed to abandon his contract, *in fieri*, upon any ground, he ought, at least, to act promptly and decidedly, on the discovery of the very first breach. If *he negotiates* with the party, afterwards; he certainly waives all right, to rescind, or abandon.— Lawrence *vs.* Dale, 3 *John. Ch. R.* 23. If one contract be proposed between the parties, and another is fraudulently substituted, in lieu thereof; equity alone can relieve.—2 *Story's Eq.* 77. Otherwise, where the necessity and use for the statute of frauds, of 29 *Charles* 2, requiring all contracts (other than such as are specifically excepted) in relation to realty, to be reduced to writing? There has been no testimony adduced, that Dove ever made any effort, or indeed, any application, to Maynor, to rescind this contract, set up in the complainant's bill.

There is no testimony, that goes to prove that Dove, upon ascertaining that the bond to Maynor contained a different contract, from the one made, ever gave any notice to Maynor, of any design or

[Maynor & al. *vs.* Lewis.]

purpose, to annul or rescind the contract, as contained in the bond. And, indeed, there has been no testimony introduced, which establishes that Dove ever became dissatisfied with his contract with Maynor, until his cupidity had been stimulated, and honesty seduced, by the higher price, offered and paid by Lewis. But upon the contrary, subsequently recognizes his contract, redeems his bond, and complies with its conditions, by executing a deed to Maynor, for this lot of land. Then, such being the law and the evidence, until the contract between Dove and Maynor has been rescinded, it follows as a corrollary, that the bond itself, being the highest evidence of the contract, must stand, until it has been annulled and set aside, upon the ground of fraud, in a Court of Chancery. Lewis can derive no advantage, from having the oldest legal title, obtained and procured in the manner disclosed by the testimony in this case. Nor can he, to cover his own fraud, seek shelter and protection, under this imaginary fraud of Maynor, towards Dove. None other than Dove, or those holding bona fide under him, can set aside this contract, upon the ground of fraud. No third party can come in, with unclean hands, covet another's rights, and secure to himself legal advantages, most unjustly and iniquitously, and yet flatter himself, that he can escape the searching eye of a Court of Equity.—Jackson *vs.* Hunt, 12 *Johns. R.* 82, 83. This case does not fall within the provisions of the Statutes of 13 and 27 Elizabeth, which authorizes Courts of Law and Equity to interfere, and set aside contracts and conveyances, upon the ground of fraud, for the benefit of creditors. Could these statutes, by any fair construction, be made applicable to the case at bar ; the exception would then be more plausible, and tenable. But standing as it does, upon principles totally and entirely different, I must still adhere to my first impressions, reiterate the charge of the Court to the Jury, and overrule the exception of the respondent's counsel.

Having disposed of the preceding objections, I come now to the fifth and last, to-wit, that the Court erred, in its charge to the Jury, in charging that it was not necessary, for the complainants to give the bond of Dove to Maynor, in evidence to the Jury. That the naked possession of Godwin, one of the complainants, of the land, was sufficient evidence of the contract, between Dove and Maynor, if Lewis, the defendant, had notice of that possession, so far as to put him, Lewis, upon the enquiry, before his purchase of the land from

Dove, to enable them to decree in favor of the complainants. In the first part of the last exception, I am satisfied that the Court erred, as has been stated. It did so, evidently, inasmuch as the complainants, having set up the existence of an older equitable title, and proven the same to have been reduced to writing, were bound to produce that written contract, or to account, satisfactorily, for its absence. Yet, as the bond was in evidence to the Jury, and the defendant having sustained no injury upon that account; the remark of the Court to the Jury, was nothing more than a mere speculative opinion, an *"obiter dictum"* which, of itself, can afford no sufficient ground, under the circumstances, for a new trial. When a misdirection of the Judge arises, the first enquiry is, whether it was in a material point, and affected the merits of the case. The Court, in passing upon exceptions of this character, is bound always to make this enquiry; otherwise, there would he no end to new trials; and the remedy would be infinitely worse than the disease.—3 *East*, 455; 8 *Ib.* 352; Flemming *vs.* Gilbert, 3 *John.* 532. Being satisfied, that though the Court did err, in that portion of its charge, as has been imputed to it, yet, as the bond was given in evidence to the Jury, and the remark of the Court nothing more than a speculative opinion, an *"obiter dictum,"* upon a point, that could not affect the merits of the case, to the prejudice of the defendant; it seems to me cannot, of itself, be sufficient ground, alone, for granting a new trial. Though, had there been no bond, and nothing more than a parol contract, and the complainant, under that contract, had gone into possession of the land, constructed buildings, opened clearings, made fences, and enhanced considerably the value of the same, and the parol contract could be established; there can be no doubt, but that equity would decree a specific performance, against the vendor and subsequent purchasers, with notice.—1 *Maddox Ch.* 379.

But to return to the concluding parts of the fifth exception, upon the subject of notice. Was the possession of Godwin notice to Lewis, of the contract, under which Godwin and Maynor sold? Let us examine this point, upon authority, and see how far the doctrine has been carried, in the many cases reported, precisely analagous to the case at bar. "If a person purchases an estate, knowing "it to be in the possession of tenants; he is bound to enquire into the "estate, which these tenants have, and therefore he is affected with

[Maynor & al. *vs.* Lewis.]

"notice of all the facts, as to their estate."—1 *Story's Eq.* 389.
This very dictum of Judge Story is borrowed from Lord Rosslyn, in
the case of Taylor *vs.* Stibbert, 2 *Ves. jr.* 440. In Douglass *vs.*
Whiting, 7 *Vesey,* 436, and Daniels *vs.* Downs, 16 *Vesey,* 249, the
same doctrine is held,—that if a person purchases an estate, when
there is a tenant, and neglects to look into the nature of the estate,
and the title of such tenants ; he must take, subject to such rights, as
the tenants may have,—almost the precise language of Lord Ross-
lyn, in the case in 2 *Ves.* There are many other cases in point,
and which could be cited, all going to the same extent, to affect the
purchaser with notice, where there are tenants in possession.
I will refer, however, to one other authority, highly complimented by
Chancellor Kent, and which is to be found in the notes of Mr. Cov-
entry, in 2 *Powell on Mortgages,* 599, in which the author remarks,
that " a purchaser cannot be advised to complete a contract for an
" estate, not in the vendor's own occupation, without a communi-
" cation with the tenants, to ascertain what interest they have."
The cases, cited in this authority, are numerous, and the doctrine
most ably discussed, both in the notes and the cases referred to.
From these authorities, it must be clear, to every legal mind, that the
possession of Godwin was notice to Lewis, and he, Lewis, was
bound to enquire into Godwin's estate, before he purchased from
Dove. That Lewis knew Godwin to be in possession, he admits in
his answer ; and it was proven also, by the testimony of Foster, who
swore, that in the fall of the year 1835, Lewis came by his house,
and invited him to go with him, Lewis, over to Godwin's, for that he
wished to purchase from Godwin his land. That he went with him,
and then heard Godwin tell him how the title stood, and what had been
Maynor's contract with Dove, and his contract with Maynor ; that
Godwin asked him, Lewis, eight hundred dollars for the land, and that
Lewis was willing to give only six hundred. Ransom Godwin swore,
that upon the road in Stewart county, he fell in company with
Lewis, who told him of poor old Godwin's possession of the land—
that he was not able to comply with his contract, in the purchase of
the land, and he feared would lose it.

Does such testimony leave any doubt, upon the mind of any intelli-
gent man, that Lewis knew of the tenancy of Godwin, before he
purchased from Dove ? If he did ; then I have shewn, as I flatter

[Maynor & al. *vs.* Lewis.]

myself, that he was affected with notice. But let us go further: Can any one doubt, from the testimony, but that Lewis had received positive notice of the contract, between Maynor and Dove, and Maynor and Godwin ; and that, notwithstanding all of this notice, he went forward, and purchased the land, and then received the oldest legal title. That he must be regarded in no other light, than as a fraudulent purchaser, attempting to cheat and defraud the complainants out of the land, to which they have acquired the oldest equitable title, under a previous contract, and in pursuance of which, had taken possession, cleared fields, built fences, and erected buildings, seems, to my mind, to be so clearly established, that I cannot consent to pursue the subject any further.

For these reasons, I shall therefore refuse the motion for a new trial, and order the decree upon the trial confirmed.

HOLT & McDOUGALD, Counsel for Complainants.
STURGIS & J. S. PATTERSON, Counsel for Respondents.